UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-279H

BRENDA BALLMAN, et al.

PLAINTIFFS

V.

LOUISVILLE AND JEFFERSON COUNTY                          DEFENDANT
METROPOLITAN SEWER DISTRICT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are residents of Harold Avenue Neighborhood who have sued the Louisville and Jefferson County Metropolitan Sewer District ("MSD") for installing sewers without obtaining a majority vote by the residents as MSD's posted Capital Project Assessment Procedures requires.[1]  They have brought numerous claims, including violation of their voting rights under the federal and Kentucky constitutions, common law fraud, violation of the Kentucky Consumer Protection Statute, breach of contract, and equitable estoppel.  They seek a declaratory judgment as to their constitutional claim, a temporary and permanent injunction against MSD, and an award of costs and expenses, including attorneys fees.  One week after removal, MSD filed this motion to dismiss.  Plaintiffs have responded and have moved to strike MSD's motion to dismiss for introducing facts not contained in the complaint.

The viability of these claims depends on whether MSD violated any right of Plaintiffs

---

[1] The complaint was originally brought in Jefferson Circuit Court, but was removed to this federal Court on June 7, 2006.

when it installed sewers, calculated assessments, and filed apportionment warrants against their properties despite failing to obtain a majority vote from the residents of the Harold Avenue Neighborhood.  After careful examination and for the reasons that follow, the Court must conclude that Plaintiffs' complaint fails to state a claim upon which relief may be granted as a matter of law.

I.

The Court will recite the facts as set forth in the complaint and construe them in the light most favorable to the Plaintiffs.

Plaintiffs are residents of Harold Avenue Neighborhood, which is comprised of over one hundred homes.  Until recently, Harold Avenue Neighborhood had no sanitary sewer system, and it utilized septic tanks to dispose of waste.  MSD is a public body corporate created pursuant Ky. Rev. Stat. Ann. § 76 and the regional provider of wastewater services under the Clean Water Act, 33 U.S.C. § 1288, for the area in which the Harold Avenue Neighborhood is located.

According to the complaint and a copy of MSD's website filed therewith, MSD has a Capital Project Assessment Procedure stating the procedures under which it will extend sanitary sewers:[2]

> The assessment process begins with a petition or request from customers to MSD to provide sanitary sewer service to their neighborhood.  MSD reviews the proposed project area and produces a plan to serve the area.  Included in the plan is

---

[2] MSD denies that the information on its website fully restates its assessment policy.  MSD argues further that the website postdates the relevant events in this action and does not explain all the circumstances under which MSD will extend sewers.  In support of this argument MSD filed as an exhibit an assessment policy from December 2, 1991, which sets forth a prioritization schedule for the extension of collector sewer systems that merely requires evidence that a *significant number* of the property owners wish to be served.  Since the Court is ruling on a motion to dismiss pursuant Fed. Rule Civ. P. 12(b)(6), it shall refrain from considering the validity of MSD's assessment policy and instead take the facts as given in the complaint.  *See Wyser-Pratte Mgmt Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

a cost estimate for the project.  A guaranteed maximum assessment (GMA) for individual property owners is calculated by MSD based on the cost estimate.

The neighborhood residents are notified of the GMA and then allowed to vote on the possibility of MSD sanitary sewer service.  If the majority of residents who vote are in favor of sewers, the project is initiated by MSD's Board.

MSD's Wastewater and Operations Capital Program, http://www.msdlouky.org/programs/cap-manual/about.htm (last visited Feb. 6, 2007).  In 1993, MSD held votes at two town-hall meetings that did not result in the initiation of sanitary sewer service in the Harold Avenue Neighborhood.  In April 1997, MSD solicited votes, and sixty-eight out of 112 total residents responded.[3]  The vote was a tie.  In a memo dated May 9, 1997, Gordon Garner, MSD's then Executive Director, informed the MSD Board of Directors (the "Board") of the vote and recommended proceeding with the installation of sanitary sewers in the Harold Avenue Neighborhood.  The Board approved the recommendation.

To attach the Harold Avenue Neighborhood sewer system to the existing sewer system, MSD determined that it must lay pipe through adjoining property, and it commenced proceedings to obtain easements.  At least one property owner strenuously opposed these proceedings, resulting in several years of litigation that was finally resolved in 2005.  By letter dated July 6, 2005, MSD notified the Harold Avenue Neighborhood residents that it would soon finalize the installation of the sewer system.  By letter dated April 24, 2006, MSD informed the residents that the GMA assigned to each property would be $4000.00, and it attached liens to

---

[3] In the complaint, Plaintiffs' allege that MSD misrepresented to its Board that it had held a town hall meeting for the Harold Avenue Neighborhood residents on April 17, 1997, when it had actually solicited the votes by mail.  Plaintiffs attach minutes of the allegedly fake meeting to the complaint.  Curiously, this meeting is referenced as having actually occurred in *Louisville and Jefferson County Metropolitan Sewer Dist. v. Becker*, No. 2001-CA-001457-MR, 2003 WL 1253699, *1 (Ky. Ct. App. 2003), of which Plaintiffs request this Court take judicial notice.  Since this opinion is ruling on a motion to dismiss, the Court will consider only the facts alleged in the complaint and assume the meeting was faked.  *See Wyser-Pratte Mgmt Co., Inc.*, 413 F.3d at 560.

each property to secure such payment.[4]

In considering a motion to dismiss the court must accept the allegations in the complaint as true, but may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice. *Wyser-Pratte Mgmt Co., Inc.*, 413 F.3d at 560. Plaintiffs have moved to strike MSD's motion to dismiss because it introduces additional facts not contained in the complaint. The Court is able to rule on the claims without considering the additional factual allegations, so it need not strike Defendant's motion.

## II.

As a preliminary matter, MSD asserts a statute of limitations defense. MSD argues that the installation of the sewers was completed in September 2000, and so Plaintiffs knew or should have known of their harm at that time. However, according to MSD's July 6, 2005 letter to Plaintiffs, legal proceedings had halted the project and it had not been completed as of that date. Moreover, Plaintiffs were not notified of the assessment costs until shortly after April 24, 2006, when they received a letter from MSD stating that the GMA would be $4000.00 per property. This date serves as the date of accrual for all of Plaintiffs' claims, so they were timely when filed in Jefferson Circuit Court in May 2006.[5]

---

[4] MSD has a statutory duty to recover the costs of installing sewers from the owners of benefitted properties. Ky. Rev. Stat. Ann. § 76.172 (2007).

[5] The statutes of limitations for the relevant causes of action in Kentucky are as follows: an action brought under 42 U.S.C. § 1983 shall be commenced within one year from the date plaintiff knew or should have known of the injury. Ky. Rev. Stat. Ann. § 413.140; *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005). Fraud claims must be brought within five years of discovery of the fraud, but no later than ten years after its perpetration. Ky. Rev. Stat. Ann. § 413.120(12); Ky. Rev. Stat. Ann. § 413.130(3). Contract claims must be brought within five years from the date of breach if they are oral contracts and within fifteen years if they are based on a written instrument. Ky. Rev. Stat. Ann. § 413.120(1); Ky. Rev. Stat. Ann. § 413.090; *Hoskins' Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957). A consumer fraud claim must be brought within two years of an ascertainable loss of property.

III.

Count I of the amended complaint seeks a declaratory judgement as to the constitutionality of MSD's actions.  Alleging various state and federal constitutional violations, Plaintiffs bring a claim under 42 U.S.C. § 1983 for deprivation of civil rights.[6]  Although the precise nature of this claim is not entirely clear from either the original or amended complaint, Plaintiffs argue more specifically in their responses that the fundamental nature of this claim concerns a violation of their voting rights.

No statutory or constitutional provision requires MSD to obtain a majority vote of affected property owners to build sewers and impose assessments in the area under its care and control.  Kentucky's highest court held that "[i]t was long ago settled that property owners could be assessed for street improvements without violating any of their constitutional rights." *Vasseur v. City of Calvert*, 320 S.W.2d 308, 309 (Ky. 1959).  Also well established is the principal that federal constitutional law does not require either notice or a hearing to affected property owners before building sewers or assessing their costs to the property owners.  *See Mt. St. Mary's Cemetery Assoc. v. Mullins*, 248 U.S. 501, 505 (1919).  Unless MSD's assessment is arbitrary and unreasonable compared to the extent of the benefit, imposition of such assessment against the properties benefitted does not violate due process.  *See id.*  These principals seem to be fully applicable today, and Plaintiffs do not claim that the assessment itself is arbitrary or unreasonable.

---

Ky. Rev. Stat. Ann. § 367.220(5).

[6] In their amended complaint, Plaintiffs allege violations of the First Amendment, Fifth Amendment, Due Process Clause, Equal Protection Clause, and Privileges and Immunities Clauses of the federal Constitution, as well as, Sections 1, 2, 3, 6, and 13 of the Kentucky Constitution.

Nevertheless, Plaintiffs argue that a constitutional right to vote arose out of MSD's assessment policy. Plaintiffs allege that MSD represented that it would not build sewers in the Harold Avenue area unless a majority of affected owners voted in favor of sewers.[7]  Citing *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993), they argue that regardless of whether MSD was statutorily required to elicit a majority vote, promising Plaintiffs such a vote on sewers acts to vest their right to vote. In other words, once MSD promised Plaintiffs the ability to vote for installation of sewers, their right to do so becomes a fundamental constitutional right, and abrogating it creates a constitutional violation.

The Court does not find this argument very convincing. *Austin* was a § 1983 case based on an alleged violation of the right to vote in connection with Michigan's procedure for voter-initiated legislation. *Austin*, 994 F.2d at 293. In that case, an initiative could be placed on the ballot if signatures were obtained from registered voters totaling eight percent of the total vote cast in the last gubernatorial election. *Id.* The Michigan Board of State Canvassers disqualified a portion of the signatures gathered to place an initiative on the ballot, effectively blocking a particular voter initiative. *Id.* at 293. In holding that the plaintiffs failed to state a claim under § 1983, the *Austin* court relied heavily upon *Kelly v. Macon-Bibb County Bd. of Elections*, 608 F.Supp. 1036 (M.D. Ga. 1985), which found that referendums, unlike general elections for a representative form of government, are not constitutionally compelled. *Austin*, 994 F.2d at 296. The *Kelly* court noted that the legislature need not have granted voters referendum power, and doing so did not create a fundamental right protected by the U.S. Constitution. *Kelly*, 608 F.Supp at 1039. So long as the state did not discriminate on the basis of "suspect" classifications

---

[7] The Court treats this allegation as true for purposes of a motion to dismiss even though Defendants fervently argue that it does not accurately describe their policy, particularly at the time of the events in question.

such as race, it could limit who could sign a referendum petition to registered voters who had voted in the last general election.  *Id.*

Like the referendum procedure in *Kelly*, no statutory scheme requires MSD to hold a vote prior to installing sewers in any neighborhood, and no statute describes a method for conducting such a vote.  MSD's mission is to provide sanitary sewer service to all of Jefferson County, and it uses various methods, including votes by residents, to determine the priority with which it will do so.  MSD's policies compliment the policies of other government bodies, including Louisville Metro, which requires property owners in Jefferson County to connect to available sewers. Louisville Metro, Ky., Code § 50.04 (2006).  This case implicates neither a fundamental right to vote for a representative form of government, nor does it involve discrimination based on any "suspect" class.  Consequently, MSD's failure to follow its internal policies for installing sewers does not implicate a fundamental right.  Plaintiffs' theory does not support a § 1983 claim.

Nor does Plaintiffs' theory support a claim under the Kentucky Constitution.  Section 6 of the Kentucky Constitution provides that "[a]ll elections shall be free and equal."  Kentucky appellate courts have consistently interpreted this section to mean "that the voter shall not be physically restrained in the exercise of his right of franchise by either civil or military authority, and that every voter shall have the same right as any other voter."  *Asher v. Arnett*, 132 S.W.2d 772, 775 (1939) (quoting *Winston v. Moore*, 91 A. 520 (Pa. 1914)).  Transgression of an election law, intentional fraud, intimidation, bribery or violence would also implicate Section 6.  *See Kirk v. Harmon*, 557 S.W.2d 220, 221 (Ky. App. 1977).  None of these were present in this case. Regardless of whether MSD's interpretation of the results of the vote did not comply with its internal assessment policy, its actions do not trigger Section 6 of the Kentucky Constitution.

IV.

Count II of the complaint alleges fraudulent concealment and fraudulent misrepresentation, and Count III alleges violation of the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. § 367.170 (2007).  Both of these claims are foreclosed by the Claims Against Local Governments Act ("CALGA"), Ky. Rev. Stat. Ann. § 65.200-65.2006 (2007).  CALGA protects local governments from liability for "any claim arising from . . . the exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources."  Ky. Rev. Stat. Ann. § 65.2003(d).

CALGA defines a local government in pertinent part as "any special district...created or controlled by a local government."  Ky. Rev. Stat. Ann. § 65.200(3).  A special district created by a government entity pursuant to a Kentucky statute has been held to be a "local government" within the meaning of CALGA.  *See Siding Sales v. Warren County Water Dist.*, 984 S.W.2d 490, 493 (Ky. App. 1998) (holding that the Warren County Water District is a local government within the meaning of CALGA because it is a special district created by the Warren County Fiscal Court pursuant Ky. Rev. Stat. Ann. § 74).  Likewise, MSD was created by the City of Louisville and Jefferson County pursuant to Ky. Rev. Stat. Ann. § 76.  *See Veail v. Louisville and Jefferson County Metro. Sewer Dist.*, 197 S.W.2d 413, 415 (Ky. 1946).  Thus, MSD is a local government under the definition of CALGA.

To enjoy CALGA immunity, the act from which liability arises must stem from some exercise of discretion as to whether and how to utilize or apply existing resources.  *See* Ky. Rev. Stat. Ann. § 65.2003(d) (2006).  As Plaintiff correctly points out, CALGA immunity does not protect a local government when it breaches a ministerial duty.  *See Madden v. City of Louisville*,

8

2004 WL 1588279, *1 (Ky. Ct. App. 2004).  However, Plaintiffs' characterization of MSD's

action as a ministerial function is unpersuasive.  In *Madden*, the court found that MSD could be

held liable for failure to maintain the sewers because that was a ministerial duty it owed to

citizens, but it could not be held liable for a discretionary decision about whether to construct

sewers.  *See id.*  Here, Plaintiffs are attempting to hold MSD liable for its decision to build

sewers in contradiction to its policy.  There is no statutory or constitutional requirement that

MSD hold a vote prior to installing sewers, so its decision is discretionary.  Therefore, CALGA

protects MSD from liability for Plaintiffs' claims of fraud and violation of Kentucky's Consumer

Protection Act.

　　　　MSD may also be entitled to common-law immunity in exercise of a quasi-legislative

function of deciding whether to install sewers.  *See Greenway Enterprises, Inc. v. City of

Frankfort*, 148 S.W.3d 298, 301 (Ky. Ct. App. 2004).  Since the Court has made a threshold

determination that CALGA immunity applies, common-law immunity need not be analyzed.

Nor will the Court determine whether Plaintiffs are among the class of persons protected by the

KCPA.

<h2 style="text-align:center">V.</h2>

　　　　Count IV of the complaint alleges breach of contract; however, no contract, written or

oral, existed between the parties.  "Not every agreement or understanding rises to the level of a

legally enforceable contract."  *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997).  To be

enforceable, a Kentucky contract must have definite and certain terms creating mutual

obligations for both parties.  *Id.*  Assuming MSD's online assessment policy was available and

known to the Plaintiffs prior to initiation of the Harold Avenue sewer project, the policy did not

9

create an enforceable contract.  MSD's self-imposed policy of holding a vote prior to laying

sewers did not create any obligations on either party.  Moreover, no consideration was

exchanged for any promise.  Under Kentucky law, "consideration for a promise is an act other

than a promise, or a forbearance, or the creation, modification or destruction of a legal relation,

or a return promise, bargained for and given in exchange for the promise."  *Osborn v. American

States Ins. Co.*, 449 S.W.2d 769, 771 (Ky. 1970) (quoting Restatement of the Law of Contracts §

751).  No negotiation occurred, and neither party bargained for benefits arising from any

agreement.  The policy, if anything, was merely an unenforceable gratuitous promise.

## VI.

Count V of the complaint seeks injunctive relief based on a theory of equitable estoppel.

With only limited exception, the doctrine of equitable estoppel has no application to

governments, municipal corporations and other agencies when their officials are acting in

governmental capacities.  *Maryland Cas. Co. v. Magoffin County Bd. of Educ.*, 358 S.W.2d 353,

359 (Ky. 1962).  Equitable estoppel will only apply to government entities in exceptional

circumstances.  *Urban Renewal and Cmty. Dev. Agency of Louisville v. Int'l Harvester Co. of

Delaware*, 455 S.W.2d 69, 72 (Ky. 1970) (holding that equitable estoppel did not apply against a

community development agency to stop property condemnation when there had been no

misrepresentation, concealment, unfair dealing, or overreaching).

To support their argument that equitable estoppel should apply against MSD, Plaintiffs

cite *Urban Renewal and Cmty. Dev. Agency of Louisville v. Goodwin*, 514 S.W.2d 190 (Ky.

1970).  In *Goodwin*, the court applied the doctrine of equitable estoppel against an urban renewal

agency that had informed owners of condemned property by letter that they would be permitted

to retain their residences if they made certain improvements to their properties. *See id.* at 191.
In reliance upon the written promise, the residents made substantial improvements to their
property, and within a period of twenty-six months they built a new roof, improved electrical
wiring and plumbing, landscaped the lot, improved outbuildings, installed exterior lighting, and
resurfaced part of the driveway. *Id.* The facts of *Goodwin* are wholly distinguishable from the
present case, in which Plaintiffs cannot be said to have expended considerable sums in reliance
upon the sewers not being installed. Moreover, MSD made no explicit promise to Plaintiffs that
it would not install sewers in the Harold Avenue area, and Plaintiffs mistakenly relied upon a
general MSD policy for determining sewer installation priority. "A municipality is not estopped
by a mistake, unauthorized act, or dereliction of duty on the part of a public official." *Monticello
Elec. Light Co. v. Monticello*, 259 S.W.2d 486, 488 (Ky. 1953).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED and
Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

This is a final order.

This ___ day of February, 2007.

_____
JOHN G. HEYBURN II
CHIEF JUDGE, U.S. DISTRICT COURT

cc:     Counsel of Record